UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

MICHAEL RODRIGUEZ-ARANGO,

        Plaintiff,

v.

UNKNOWN PANCHERI et al.,

        Defendants.
_____/

Case No. 2:23-cv-34

Honorable Maarten Vermaat

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 5.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues URF Prison Counselor Unknown Pancheri and Richard D. Russell, the Manager of the Grievance Section at MDOC's Office of Legal Affairs.

Plaintiff alleges that on May 5, 2022, Defendant Pancheri was assigned to conduct mail rounds, including legal mail rounds. (ECF No. 1, PageID.5.) Plaintiff approached Defendant

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

3

Pancheri and tried to give him "a[n] envelope containing oversize mail with a signed disbursement to cover the cost of the postage." (*Id.*) Plaintiff claims that Defendant Pancheri refused to accept the mail. (*Id.*) The next day, Plaintiff filed a grievance against Defendant Pancheri. (*Id.*, PageID.5–6.) Plaintiff indicated that there were no other prison counselors present to "look into this issue" and that there was "no good reason" for Defendant Pancheri to refuse to send Plaintiff's oversized mail. (*Id.*, PageID.6.)

Plaintiff has attached copies of his grievance and grievance appeals to his complaint. The Step I response indicates that Defendant Pancheri was interviewed regarding the incident. (ECF No. 1-1, PageID.17.) Defendant Pancheri stated that Plaintiff "had a large [p]uffy envelope and wouldn't open it to prove it wasn't hobby craft." (*Id.*) Defendant Pancheri "refused to take it and instructed [Plaintiff] if it is hobby craft he needs to contact hobby craft director J. Preville." (*Id.*) Plaintiff's grievance was denied. (*Id.*) Plaintiff filed a Step II appeal, stating that the envelope contained "some legal papers that [Plaintiff] was sending to [his] family so that an attorney could view them." (*Id.*, PageID.14.) Plaintiff claimed that because of Defendant Pancheri's actions, the papers were sent "late" and the attorney "move[d] on." (*Id.*) Warden Corrigan (not a party) denied Plaintiff's Step II appeal on June 21, 2022. (*Id.*, PageID.19.) Defendant Russell denied Plaintiff's Step III appeal on July 14, 2022. (*Id.*, PageID.13.)

Based on the foregoing, Plaintiff asserts claims for violations of his First and Fourteenth Amendment rights against both Defendants, as well as claims for violations of MDOC policy and procedure against Defendant Pancheri. Plaintiff seeks declaratory relief, as well as $300,000.00 in compensatory damages and $300,000.00 in punitive damages. (ECF No. 1, PageID.7–8.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

4

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Claims Against Defendant Russell

Plaintiff contends that Defendant Russell violated his First and Fourteenth Amendment rights by "covering up wrongdoing by refusing to do a full investigation" and denying Plaintiff's Step III grievance appeal. (ECF No. 1, PageID.7.) Plaintiff, however, has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Russell's actions did not deprive him of due process.

Moreover, Plaintiff's First Amendment right to petition the government was not violated by Defendant Russell's conduct. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Finally, Defendant Russell's actions (or inaction) have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of

6

several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, Plaintiff has failed to state a cognizable claim against Defendant Russell premised upon his handling of Plaintiff's Step III grievance appeal.

    **B.**    **Claims Against Defendant Pancheri**

        **1.**    **First Amendment Claim**

Plaintiff contends that his right to use the mail was violated because Defendant Pancheri refused to accept Plaintiff's oversized envelope. In his grievances, Plaintiff argued that the envelope contained legal papers that he was trying to send to his family so that a lawyer could review them.

7

In *Sallier v. Brooks*, 343 F.3d 868, 873–74 (6th Cir. 2003), the United States Court of Appeals for the Sixth Circuit considered multiple potential sources of protection for legal mail, including the Sixth Amendment right to counsel, the First Amendment right to petition for redress of grievances, the First Amendment right of access to the courts, and the prisoner's general interest in protecting the attorney-client privilege. Simply calling a particular correspondence "legal mail," however, does not implicate each and every one of those protections. For example, the Sixth Amendment right to counsel applies only to criminal prosecutions. *Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974) ("As to the Sixth Amendment, its reach is only to protect the attorney-client relations in the criminal setting . . . ."); *see also Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010). There are no facts alleged in Plaintiff's complaint that support the inference that Plaintiff was attempting to send legal mail to an attorney related to a criminal proceeding. Likewise, there are no facts alleged in Plaintiff's complaint that support the inference that the communication bore any relationship to Plaintiff's direct appeal of his criminal convictions, a habeas corpus application, or a civil rights claim. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc) (noting that the First Amendment right to access the courts "extends to direct appeals, habeas corpus applications, and civil rights claims only").

Further, the ability of a prisoner "to receive materials of a legal nature" related to his legal rights and concerns itself implicates a fundamental right. *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996). Courts have, therefore, extended protections to prisoners' legal mail that do not exist for general mail. However, not all outgoing mail constitutes "legal mail," and "the question of what constitutes 'legal mail' is a question of law." *Sallier*, 343 F.3d at 871. The Michigan Administrative Code defines "legal mail" as correspondence with courts, attorneys, public officials, the office of the legislative corrections ombudsman, MDOC's central office staff, and

8

staff of the institution in which the prisoner is incarcerated. *See* Mich. Admin. Code R. 791.6603(7) (Nov. 15, 2008). Moreover, "the determination of whether mail is considered legal mail depends not only on the nature of the sender, but on the appearance of the mail [as well as] the nature of the contents." *Longmire v. Mich. Dep't of Corr.*, 454 F. Supp. 3d 702, 708 (W.D. Mich. 2020) *aff'd* No. 20-1389, 2021 WL 5352809, at *2 (6th Cir. Jun. 9, 2021) (noting that "the mail must be 'properly and clearly marked as legal materials.' . . . . [W]hile the envelope states that it is confidential, it was not, as the district court held, 'clearly marked as legal mail,' nor did it have the Commission's name on it or other salient information, such as 'the name and bar number of a licensed attorney'").

Plaintiff's allegations fall far short in both respects. Simply referencing "legal mail" is insufficient to invoke these protections. Plaintiff's complaint is wholly devoid of facts from which the Court could infer that the oversized mail that Defendant Pancheri refused to accept was outgoing legal mail. Plaintiff's statement that he was trying to send legal papers to his family so that an attorney could review them does not automatically mean that he was sending legal mail, as sending legal papers to his family falls outside the definition of "legal mail" set forth above. In any event, with respect to outgoing mail, "isolated instances of interference with prisoners' mail," such as that alleged by Plaintiff, may not rise to the level of a constitutional violation under the First Amendment. *See Johnson v. Wilkinson*, No. 98-3866, 2000 WL 1175519, at *2 (6th Cir. Aug. 11, 2000) (citing *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997)); *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing *Johnson* for the holding that "isolated incidents" of interference with prisoners' rights do not rise to the level of a First Amendment violation). Accordingly, for these reasons, Plaintiff's First Amendment claim against Defendant Pancheri will be dismissed.

## 2.     Fourteenth Amendment Claims and State Law Claims

Plaintiff contends that Defendant Pancheri violated his Fourteenth Amendment rights by refusing to send Plaintiff's oversized mail. (ECF No. 1, PageID.6–7.) To the extent that Plaintiff intended to raise a substantive due process claim regarding Defendant Pancheri's conduct, he fails to state such a claim. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, Plaintiff's claim regarding interference with his outgoing mail is properly analyzed under the First Amendment. *See supra* Part II.B.1. Consequently, any intended Fourteenth Amendment substantive due process claim will be dismissed.

10

Plaintiff also contends that Defendant Pancheri's actions violated MDOC policy and procedure regarding the handling of outgoing mail, in violation of his due process rights. Section 1983, however, does not provide redress for violations of state law. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). The only possible way a policy might enjoy constitutional protection would be through the Fourteenth Amendment's Due Process Clause.

To demonstrate a due process violation, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause; and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts, however, have routinely recognized that a prisoner does not enjoy any federal protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164. Plaintiff's allegation that Defendants violated MDOC policy and procedure, therefore, fails to raise a cognizable federal constitutional claim.

Plaintiff may be seeking to invoke this Court's supplemental jurisdiction over his state law claims for violations of MDOC policy and procedure. Ordinarily, where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims."

(citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the exercise of supplemental jurisdiction because all of Plaintiff's federal claims have been dismissed. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant Pancheri, and such claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims against Defendant Pancheri regarding violations of MDOC policy and procedure will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does

not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   March 17, 2023                         /s/ *Maarten Vermaat*
                                                Maarten Vermaat
                                                United States Magistrate Judge